## United States District Court
## Western District of Wisconsin

Gerald Harris
(Full name of plaintiff[s])

268692
(Prisoner I.D. Number)

Case No. **09 · cv · 160 · X**
(Provided by clerk of court)

Plaintiff(s),

v.

University of Wisconsin and the
University of Wisconsin Rathskeller Bar and Grill

(Full name of defendant[s])

Defendant(s).

## COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983

I. **PLACE OF PRESENT CONFINEMENT (Provide full address)**
Oakhill Correctional Institution/ P.O. Box 938/ Oregon, WI 53575

    A.    Is there a grievance procedure in your prison/jail?    YES ☒        NO ☐

    B.    Have you filed a grievance concerning the facts relating to this complaint?
        YES ☐     NO ☒

    C.    If you have used the grievance process:

        1.    Describe what you did and the result, if any.

        2.    Is the grievance process completed?

    D.    If you did not use the grievance process, explain why not.

        This matter dose not concern the Institution

4/07
P\Forms\42USC1983.Complaint

II. **PARTIES**

A.   Your name (Plaintiff) _____ Mr. Gerald Harris _____

B.   Prisoner I.D. Number _____ 268692 _____

C.   Your address O.C.I, P.O. Box 938 Oregon WI 53575-0938

     (For additional plaintiffs provide the same information in the same format on a
     separate page.)

D.   DEFENDANT (name) __ President _____

     is employed as The U.W Head or chife of command

     at __ University of Wisconsin in Madison _____

E.   Additional DEFENDANTS (names and positions):

     _____

     To the Manger of the Wisconsin Memorial Union Raths-
     keller Bar and Grill
     _____

## III.   PREVIOUS LAWSUITS

A.   Have you begun other lawsuits in state or federal court relating to the same facts
     involved in this action?         YES ☐      NO ☒

B.   Have you begun other lawsuits in state or federal court relating to your
     imprisonment?                    YES ☐      NO ☒

C.   If your answer is YES to either of the above questions, provide the following
     requested information.

     1.   Parties to the previous lawsuit

     Plaintiff(s): _____

     _____

     Defendant(s): _____

     _____

     2.   Date filed _____

     3.   Court where case filed (if federal court, name district; if state court, name the

Plaintiff(s): _____

_____

Defendant(s): _____

_____

:

2.    Date filed _____

3.    Court where case filed (if federal court, name district: if state court, name the county) _____

4.    Case number and citation _____

5.    Basic claim made _____

_____

6.    Current status (for example: Was the case dismissed? Was it appealed? Is it still pending?) _____

_____

7.    If resolved, date of disposition _____

8.    If resolved, state whether for _____
                                      (Plaintiff or Defendant)

(For additional cases, provide the above information in the same format on a separate page.)

## IV.   STATEMENT OF CLAIM

A.    State as briefly as possible the facts of your case. Describe how each named defendant is involved. Include the name of other persons involved, dates, and places. Describe specifically the injuries incurred. Do not give legal arguments or cite cases or statutes. You may do that in Item "B" below. If you allege related claims, number and set forth each claim in a separate paragraph. Use as much space as you need to state the facts. Attach extra sheets, if necessary. Unrelated separate claims should be raised in a separate civil action.

On Febuary 5, 2005; Plaintiff attended an event called the (Kites on Ice Festival) that was located on the back side of Memorial Union on the campus

of the University of Wisconsin, Madison. Plaintiff was standing outside on the Union memorial tarrace, watching the Kite On Ice Festival when two white female patrons asked if I wanted two empty pichers of beer that I could collect the deposit off of. I said yes and was given the pitchers & was directed to to take them in to Memorial Union to get the deposit, however, as I attemped to enter Memorial Union I was stopped by an aggresive white male employee; later idenified as Kyle P. Mueller, who grabbed the pitchers out of my hands and shouted "do you have a pass or a member-ship card to enter the building!?" I said no & then Mr. Mueller then said to me in a angry voice "you can't come in!" I said "why you not asking all those other white people for passes & membership cards & allowing them to go in", and he said because "we don't serve you niggers". Then he turned to his co-worker, Mr. Joshua J. Barnes & started laughing & gesturing & said "this nigger is trying to get the deposit off these pitchers". Mr. Mueller then told me to leave before he call the police, & I said go right ahead I have done nothing wrong here. There were lots of people stand-ing around in awe watching & listening as Mr. Mueller & Mr. Barnes degraded me using the "N" word & Mr. Barnes giving me his middle finger saying "we don't serve you niggers". Mr. Mueller even went as far as to attack one of his black employees in front of everyone saying "I don't like you black people". SEE EXHIBIT "A", "B", + "C

B. State briefly your legal theory or cite appropriate authority. ALL ATTACHED

The University of Wisconsin, Madison; Memorial Union was being used as a "place of public accommodation" as defined by section 201(c)(3) of Title II of the Civil Rights Act of 1964 (Act), 42 U.S.C. section 2000a during the time the Kite On Ice Festival was being held, & it's operation affected commerce. There-fore the defendant's refusal to allow plaintiff to enter Memorial Union based on his race violated the Civil Rights Act of 1964. (See Daniel Et Al. v. Paul No. 488 Supreme Court Of The United States, 395 U.S. 298; 89 S. Ct. 1697(1969)

V.  ## RELIEF YOU REQUEST

State briefly and exactly what you want the court to do for you. Make no legal arguments. Do not use this space to state the facts of your claim. Use it only to request remedies for the injuries you complain about.

The Plaintiff hereby request to be immediately monetarily compensated in the amount of $1.000.000 (One Million Dallors) for indeterminate, compensatory, and punitive damages by the defendants for the racial discrimination, embarassment, & public humiliation injuries suffered by the plaintiff by the actions of the University of Wisconsin Madison's Student Supervisor; Kyle P. Mueller, & Union Employee; Joshua J. Barnes, and also plaintiff request a refund of $247 dallors for the ticket he paid after being wrongly accused of disorderly conduct.

I declare under penalty of perjury that the foregoing is true and correct.

Complaint signed this _10_ day of _20 - 09_, _____.

Signature of Plaintiff(s)

_Herold Harris_
(If there are multiple plaintiffs, each must sign the complaint)

Prisoner I.D. Number(s) _268692_

On February 5, 2005, plaintiff attended an event called (KITE ON ICE) that was located on the back side of Memorial Union on the campus of the University of Wisconsin, Madison. Plaintiff was standing on the ground floor terrace of Memorial Union, watching the kite show when two kind white female patrons asked if I wanted two empty pitchers of beer that I could collect the deposit off of. I said yes and was given the two empty pitchers and was directed to take them in to Memorial Union to the bartender to get the deposit. However, as I walked off the terrace and attemped to enter Memorial Union, I was stopped at the door by an aggressive white male employee; later identified as a "Student Manager" who grabbed both empty beer pitchers out of my hands and shouted "do you have a pass, or a membership card to enter the building?" I told the student manager I do not have a pass or a membership card, and he shouted to me in a angry voice "you can't go in". I then said to him "why you not asking all those other white people for passes & membership cards and allowing them to go in". He then said to me in a rather arrogant manner "we do not serve you niggers". Then he turned to one of his co-workers laughing and gesturing and said this "nigger" is trying to get the deposit off these pitchers. His co-worker then gave me the middle finger and said to me "we don't serve you niggers". The student manager then told me to leave or he will call the campus police. I said to him go ahead and call them I have not done anything wrong. There was all kind of people standing around watching and listening as I conversed with the student manager as he and his co-worker called me the (N-Word) on more than one occasion as we traded dialog. The student manager even went as far as to attack one of the black employees in front of the audience of white patrons telling the black employee; "I don't like you black people!" Witnesses came up to me and told me that they heard what that employee said and if I needed they will tell what happen to a lawyer. The campus police eventually showed up to investigate; there was a total of about six campus police who came in all. One of the campus police, later identified as (Mr. M. Silbernagel) came and talked to me about what happen, and I told him that the student manager had refused to let me enter Memorial Union to get the refund from two empty pitchers of beer, and that he and his co-workers were being racial discriminative towards me; by saying to me "we do not serve you niggers", and not allowing me to enter Memorial Union. The campus police then left, and after going to talk to the student manager in private came back and told me that he believes I was disorderly and issued me a $247 dollar disorderly conduct ticket.

## RELIEF REQUESTED

The plaintiff hereby request to be immediately monetarily compensated in the amount of $1.000.000 (One million Dollars) for both punitive and compensatory damages by the defendant for the racial discrimination, embarrassment, and humiliation injuries suffered by the plaintiff at the hands of the University of Wisconsin Madison's

student manager and co-worker of Memorial Union, whose willful, malicious, wantonly, and oppressive behavior was witnessed by a very large audience of patrons who were standing around nearby watching the entire discrimination take place while attending the (KITE ON ICE) show. I also request that plaintiff be reimbursed the $247 dollars he paid for the ticket he was given by the University of Wisconsin, Madison Police Department after being wrongly accused of disorderly conduct.

GERALD HARRIS #268692

THE EVENTS THATS AT THE Memorial Union, And public
come and be welcome, And NO one is Ask "Do You Have
A guest PASS"

1. Concerts inside + outside of the Rathskeller Bar + Grill
2. Weddings And Parties
3. "(KITE ON ICE EVENT")
4. Rent out Boats
5. Pool TABLE, T.V.s
6. BAR + Resturants
7. Fertarnity And Sororities Parties
8. Hotel Rooms
9. MEETING Room
10. Travel Agent Co.
11. Snack BAKs And Shopes.
12. Public Phones + Restrooms
13. Union South has Bowling
14. Traveling guests And Students And Public set in the
    Rathskeller BAR And Grill And watch the Packers or Badgers
    Games on The Big Screen T.V
   15. Outside Terrace for The Public, Students And Travelers
   16 Poker games At the Union South
   17. Theaters, For public, Students And TRAVELERS
   18. Badgers COACH Bus And Bus Ticket Sale To The
       Public, Students, Travelers
      19. Lake in BACK of Memorial union For The Kids, PARENTS,
      Student And Public. Everybody lounging And drinking Beers
      These Events goes on everyDAY EXCEPt "KITE ON ICE"

DEPARTMENT OF CORRECTIONS
Office of the Secretary
DOC-2257 (4/04)

WISCONSIN
Wisconsin Statutes
Section 814.29 (1m)

# OFFENDER REQUEST FOR DEPARTMENT OF JUSTICE CERTIFICATION

**INSTRUCTIONS:**   SEND COMPLETED FORM TO:

Department of Justice
Civil Litigation Unit
17 West Main Street, 6th Floor
P.O. Box 7857
Madison, WI 53707-7857

I, _GERALD HARRIS_ _268692_ ,
(Print Plaintiff's Name)            (DOC Number)

wish to request a Department of Justice Certification as to three or more dismissals under Wis. Stat. § 801.02(7)(d).

I am an offender in the custody of the Wisconsin Department of Corrections.

I am seeking to file a civil action, using the Prisoner's Petitioner for Waiver of Fees/Costs, under Wis. Stat. § 814.29(1m). Please send me a certification (form DJ-LS-22) to show that I am eligible to use this procedure and so that I may submit this certification along with the other paperwork that is required.

Please mail the certification to me at:

OFFENDER NAME and DOC NUMBER (Please Print)

_GERALD HARRIS_ _268692_

INSTITUTION NAME (If Applicable)

_OAKHILL Correctional Institution_

MAILING ADDRESS (Post Office or Street)

_Post Office Box 938_

CITY _Oregon_

STATE _WI_   ZIP CODE _53575-0938_

_Gerald Harris_
SIGNATURE OF PLAINTIFF

_1-23-07_
DATE SIGNED

```
Date:  3/04/05        UW-MADISON POLICE DEPT  1429 MONROE ST      Page:      1
Time:  8:57:44                Offense Report              Program: CMS301L
```

Case No. . . . : 1-05-001365
Case Number  . : 1-05-001365

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* N A R R A T I V E   # 3 \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
OFFICER'S PRIMARY REPORT  Reported By: SILBERNAGEL, MARK M.            2/10/05

    Disorderly Conduct                MMS              05-01365

    Date/Time:
    02-05-05 at 6:40PM

    Location:
    UW Memorial, Union Rathskeller
    800 Langdon Street
    Madison, WI
    District #1

    Alcohol Involved:
    Yes.

    Drugs Involved:
    No.

    Suspect/Offender:
    Gerald (NMI) Harris
    M/B, dob: 02-21-58
    5 10 , 215 lbs., hair: black, eyes: brown
    No permanent address
    WI ID Card number: H620-2808-8061-05, expires 07
    Verbally identified (confirmed by DOT descriptors)
    No UW Affiliation
    Alcohol involved: Beer
    P.B.T. result: Test not given
    Alcohol consumed at: Unknown location
    Status: cited and released

    Citation:
    Disorderly conduct, UW-Administrative Code 18.06(30)
    Citation number: P85541
    Bond amount: $274.00
    Non-mandatory court date: 03-04-05 at 9:00AM, Dane County Circuit
    Court

    Witness:
    Kyle P. Mueller
    M/W, dob: 05-01-83
    1509 Adams Street, Apt. #2
    Madison, WI 53711
    Cell phone number: (920)901-2355
    Verbally identified (I recognized Mueller from prior professional
    contacts) UW-Staff/Rathskeller Supervisor

    Witness:

Case No. . . . : 1-05-001365                                    (Continued)
Joshua J. Barnes
M/W, dob: 11-04-81
811 Garfield Street
Madison, WI 53711
Cell phone number: (770)403-5376
Verbally identified
UW Staff/Rathskeller employee

Assisting Officers:
Officer Anna Moline-UWPD
Officer Cherise Caradine-UWPD

Narrative:
On 02-05-05 at 6:40PM, I responded to the Memorial Union, Rathskeller
regarding a report of a suspect who had become belligerent with staff.
Officer Moline and Officer Caradine were partnered together and
responded to assist.

Upon arrival at that location, I made contact with Kyle P. Mueller,
who is the Rathskeller Supervisor and who I recognized from prior
professional contacts. Mueller directed me to the area just outside
the Rathskeller on the exterior north side of the building. Mueller
identified the Male/Black subject standing outside of the Rathskeller
window as the person who caused the disturbance in the Rathskeller. I
made contact with the Male/Black subject, who I verbally identified as
Gerald (nmi) Harris.

Officer Moline and Officer Caradine arrived and monitored Harris,
while I interviewed Mueller. Mueller stated that on 02-05-05 at
approximately 6:30PM, he had observed Harris collecting empty plastic
beer pitchers from inside the Rathskeller. Mueller stated that people
who purchase pitchers of beer from the Rathskeller can return the
pitcher for deposit refund. Mueller stated it is against the
Rathskeller policy for people who have not purchased the pitchers to
return them for refunds. Mueller said he confiscated the pitchers from
Harris and advised him he could not redeem them for the deposits.
Mueller stated Harris became very agitated and accused Mueller of
being a racist.  Mueller stated Harris became increasing agitated and
began yelling words similar to fat ass bitch and fucking bitch, and
several other profanities.

Mueller said there had been several people including young children in
the Rathskeller who were leaving the area after attending the Kites on
Ice event. Mueller stated he told Harris that he was going to call the
police at which time Mueller said Harris retrieved his belongings from
the Rathskeller and went outside to the Memorial Union Terrace. *I NEVER was
in the Building*

Mueller stated that while Harris was on the Union Terrace just outside
of the Rathskeller bar window, Harris continued to yell profanities. *is Gerald
Mueller stated that one of his co-workers, Joshua J. Barnes, opened   Harris*
the Rathskeller bar window to check the welfare of Mueller. Mueller
said Harris then displayed his middle finger towards Barnes and swore

Case No. . . . : 1-05-001365                                    (Continued)
    at him. Mueller stated that as Barnes shut the window, Mueller heard
    Harris say, Bring your ass out here and I ll kick your ass.

    I made contact with Joshua J. Barnes, who I verbally identified.
    Barnes stated that he had been working at the Rathskeller Bar when he
    heard Harris yelling just outside of the building. Barnes stated he
    opened the window to check the welfare of Mueller. Barnes said he
    heard Harris yelling profanities.  Barnes said he told Harris that he
    should calm down and then closed the window.

    I interviewed Harris, who initially stated he had been inside the
    Rathskeller but later stated he had only been standing outside of the
    Rathskeller on the Union terrace. Harris initially said he had been
    holding an empty plastic beer pitcher, which he later said was two,
    that was given to him by an unidentified female.  Harris said Mueller
    took the pitcher from him and that Mueller had told him, I hate black
    people.  Harris stated he got loud, because Mueller had made a racist
    comment to him. Harris denied using any profanities or making any
    threatening statements.  I detected a slight odor of alcohol
    intoxicants emanating from Harris and I observed his eyes were
    bloodshot and glassy. I determined Harris was intoxicated but not     This is
    incapacitated                                                          a lie

    I conducted a records check of Harris, via UWPD Dispatch Personnel.
    The records check did not reveal any active arrest warrants for
    Harris.

    I escorted Harris off the Memorial Union property and issued him a
    citation for disorderly conduct.  I advised Harris that he could not
    return to the Memorial Union that evening, per Memorial Union policy.
    I also advised Harris that he would need to obtain a Union membership
    or UW affiliation in order to be an authorized user of the Memorial
    Union in the future.

    End of report.

    Officer Mark M. Silbernagel, #7706
    UW-Madison Police Department

    Jad

    APPROVED: SGT.WHITNEY

* * * * * * * * * * * * * * * END OF REPORT * * * * * * * * * * * * * * * * * * *


    I, Gerald Harris never got a alocohol breath test to see if I was
    drinking

was more likely to have occurred based on the credibility of the witnesses. In this case, EDRC cannot determine which version of the events is more credible, and therefore, we have determined that there is insufficient evidence to support the complainant's allegations that he was discriminated on the basis of his race.

EDRC did, however, find one area of agreement between the complainant and the student supervisor concerning the events on February 5, 2005. Additionally, the bartender provided information about his actions, which the complainant did not allege. Although these actions did not represent discriminatory acts by the employees, they raised concerns about whether their actions reflect appropriate standards of behavior expected from Union employees who deal with members of the public. Based on our review of the information, EDRC concluded that both the student supervisor and the bartender exhibited poor judgment and employed inappropriate language in their interactions with the complainant.

The student supervisor said that as he understands it, the Union policy for dealing with disruptive patrons is to stay calm and tell the patron what the policy is, which he did as it applies to returning empty pitchers. However, the student supervisor said that after he explained the policy, the complainant called him a racist numerous times and he allegedly was "making a scene." The student supervisor tried to calm him down by admitting that he was a racist. The scene was witnessed by a custodial employee of the Union. This custodial employee acknowledged that he heard the student supervisor admit to being a racist, but told EDRC on two different occasions, that he regarded the student supervisor's tone as sarcastic.

In his interview with EDRC, the student supervisor said that it was a mistake to admit to being a racist, a view echoed by his supervisor. This statement, which was intended to calm the complainant down, instead, apparently agitated and irritated him further. The student supervisor's admission to be a racist was inappropriate and served as one of the main points made by the complainant in his complaint against the University. 

Similarly the bartender made a serious error in judgment in dealing with the complainant; an error which he admits was caused by his frustration in dealing with too many angry people who have had too much to drink. When the complainant allegedly turned his attention to the bartender and began yelling at him, the bartender stated that he said something to the effect to the complainant: "'I'll bet you use the race-thing all the time. Probably, anytime someone does something you don't like."

This statement was unnecessarily provocative. It raised the level of tension and caused the complainant, according to the bartender, to ask him "in a rather pointed manner if I also hated black people. Before I could say a word, he immediately followed up by saying, 'Yeah, you [sic] probably as racist as him'." The complainant then allegedly physically threatened him.

## EQUAL RIGHTS DIVISION

GERALD HARRIS,

    *Complainant,,*

V.

STATE OF WISCONSIN
UNIVERSITY OF WISCONSIN - MADISON,

    *Respondent.*

MY WITNESS

### DECLARATION OF CHRISTOPHER BURNS

The undersigned Christopher Burns hereby declares under penalty of perjury pursuant to 28 U.S.C. § 1746 that:

1. My name is Christopher Burns and I am an African-American adult male.

2. My birthday is **11 · 8 · 73** .

3. My address is 6231 University Avenue, Madison, Wisconsin, 53705.

4. My phone number is 608.**243·0966**

5. Someone who will always know how to reach me and is unlikely to move is **Stanley Sallay** His/Her address is ( UNKNOWN )  (608) 772·3118 _____, and his/her phone number is _____.

6.  I am employed as a staff member of Building Services for the University of
    Wisconsin – Madison. I have been employed in that position since January 12,
    2005.

7.  On February 5, 2005, I was working at the Memorial Union. On this day, there
    was a Kites on Ice public activity going on at the Union Terrace.

8.  During that afternoon, I was exiting the Rathskeller, which is a restaurant area
    inside the Memorial Union, and heading outside onto the area of the Union
    Terrace.

9.  While exiting the building, I heard an African-American man, who I now know as
    Gerald Harris, talking loudly with a Rathskeller employee.

10. Mr. Harris was stating something to the effect of, "Man, you shouldn't be telling
    me things like that. You shouldn't be telling me that you are a racist and that you
    don't serve niggers, you don't know me, you don't know who I am."

11. Mr. Harris than noticed me standing near the incident and pulled me aside. Mr.
    Harris than told me that the Rathskeller employee would not let him return two
    plastic pitchers because he was an African-American man, and that the
    Rathskeller employee had called him a "nigger".

12. While relaying this information to me, Mr. Harris seemed genuinely upset, and I
    believe that he was telling me the truth about what happened between himself and
    the Rathskeller employee.

13. Mr. Harris then asked the Rathskeller employee to repeat what he had said to him,
    and the Rathskeller employee stated, "Yeah, I'm racist."

2

14. The tone of voice of the Rathskeller employee could have been sarcastic. Even if he was being sarcastic, the employee should have been professional and should not have said that at all.

15. Before February 5, 2005, I had never meet Gerald Harris. I am not a friend of Mr. Harris's.

16. About two to three weeks after the incident, I was interviewed by an Attorney for the University of Madison.

17. During the interview, the Attorney took handwritten notes and I watched what he was writing during the interview.

18. At no time during the interview did the Attorney offer for me to review his notes on what I had said, nor did he allow me to make any changes to what he had written down.

19. I do not remember signing anything from my interview with the Attorney.

20. I have read this statement of THREE pages typed and I declare that the foregoing are based on my personal knowledge obtained through my own observations.

21. I declare, under penalty of perjury, that the foregoing is true and correct.

22. I have executed this Declaration on the 12th of Aug, 2005.


Christopher Burns

3

1. NO Beer was beening served or drinking from
2. NO Breath test For beer given to the Plaintiff By the Polices
3. University should have Known About MR. Mueller And Barnes was ~~Racial~~ "Racial" TO Blacks and the University OF wiscousin "Rathskeller Bar & Grill" Should have Known Abo The University of wiscousin And The university of wiscousin of Madison memorial Union "Rathskeller Bar + Grill" Hired MR. Mueller + MR. Barnes. Ff. The U.S. Marshel would have got there social sercurity Number I Think They could have been found. The deffendents mueller + Barnes information is on the Police Report.

Plaintiff:
GERald Harris #268692

Address To The U. of wisconsin
"Kevin

GERALD HARRIS # 268652 09 C 160
DOC 160
REC'D/FILED
2009 MAR 18 AM 9:39
CHRIS ? ? ? ? ?
CLERK US DIST COURT

I GERALD HARRIS WAS TOLD BY THE JUDGE CALL DEAN
THAT MY CASE 08-CV-71866 WAS DISMISS, BECAUSE
THE defendents MUELLER & BARNES couldn't
be FOUND TO BE SERVE THERE PAPERS. THE
COURT DISMISS MY CASE. THE COURT give
me until 30 DAYS TO File THIS COMPLAINT
AND TO HAVE thing thing sent to the
Right defendents. I SUPPOSE TO SEW FOR
MY NEW CASE. I sent these PAPERS TO
THE WRONG PLACE AND the PAPERS WAS sent
BACK TO ME. MY INMATES STATEMENTS WAS
Sent to DEPARTMENT OF Justice
                CIVIL Litigation Unit
                17 WEST MAIN STREET 6 th Fl
                P.O. Box 7857
                MADISON WI 53707-7857
I'm send Those copies to you to SERVER
The Right defendents. I'm Filing A NEW
CASE AGAINST the TWO defendents.
Please give ME A NEW CASE Number
                        Think You
P.S. I Hope I'm sending these Statement
      To the Right defendents.



**STATE OF WISCONSIN**
**DEPARTMENT OF JUSTICE**

J.B. VAN HOLLEN
ATTORNEY GENERAL

Raymond P. Taffora
Deputy Attorney General

17 W. Main Street
P.O. Box 7857
Madison, WI 53707-7857
www.doj.state.wi.us

John R. Sweeney
Assistant Attorney General
sweeneyjr@doj.state.wi.us
608/264-9457
FAX 608/267-8906

February 25, 2009

Mr. Gerald Harris #268692
Oakhill Correctional Institution
PO Box 938
Oregon, WI 53575-0938

      Re:    Documents Received

Dear Mr. Harris:

On February 24, 2009 we received several documents from you. I do not intend to do anything with these documents.

Your case with the Western District of Wisconsin Case No. 08-cv-0718 is dismissed . It is my understanding that you have appealed that decision.

                    Sincerely,

                    John R. Sweeney
                    Assistant Attorney General

JRS:jph
Enclosures

THE Addresses: KEVIN Reilly

UNIVERSITY OF WISCONSIN
IN madison

1720 VAN Hise Hall
1220 Linden DR
Madison WI 53706
Ph. (608) 262-7321

U.W. OF WISCONSIN Memorial Union RAThskeller
BAR & Grill (1:800 Langdon st
Madison, WI,
53706
Ph (608) 265-3000

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GERALD HARRIS,

               Plaintiff,

v.

MR. JOHN WILEY, Chancellor, UW-Madison;
MR. KYLE P. MUELLER, UW Staff, Rathskeller
Supervisor; and MR. JOSHUA J. BARNES, UW
Staff, Rathskeller Employee,

               Defendants.

**ORDER**

08-cv-718-lsa

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This case was filed originally in the United States District Court for the Eastern

District of Wisconsin. In an order dated May 15, 2008, Judge Charles N. Clevert granted

plaintiff's request to proceed <u>in forma pauperis</u> on claims under 42 U.S.C. §§ 1981 and

1985(3) against defendants John Wiley, Kyle Mueller and Joshua Barnes. In the same order,

the court directed the United States Marshal to serve defendants with plaintiff's complaint.

Defendant Wiley was served on June 3, 2008. However, before defendants Mueller and

Barnes had been properly served, Magistrate Judge William Callahan entered an order

transferring the case to this court under 28 U.S.C. § 1404(a) pursuant to plaintiff's request.

1

Copy of this document has been
provided to: plaintiff
this 16 day of FEB 20 09
by

The United States Marshal was unable to serve defendants Mueller and Barnes, and in an order dated January 22, 2009, I dismissed Mueller and Barnes from the case. Also in that order, I granted defendant Wiley's motion to dismiss the complaint as to him for plaintiff's failure to allege Wiley's personal involvement in depriving plaintiff of his civil rights. Judgment was entered January 23, 2009. Now plaintiff has filed a notice of appeal from that judgment, as well as a motion for leave to proceed in forma pauperis on appeal.

Plaintiff's request for leave to proceed in forma pauperis on appeal will be denied, because I am certifying that his appeal is not taken in good faith. No reasonable person could suppose that this appeal has some merit. Walker v. O'Brien, 216 F.3d 626, 632 (7th Cir. 2000). Defendants Mueller and Barnes cannot be located, and therefore this court cannot exercise personal jurisdiction over them. Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999). Further, there is no dispute that plaintiff cannot maintain his 42 U.S.C. §§ 1981 and 1985 claims against defendant Wiley because there are no allegations in the complaint suggesting that Wiley was personally involved in depriving plaintiff of his civil rights.

Because I am certifying plaintiff's appeal as not having been taken in good faith, he cannot proceed with his appeal without prepaying the $455 filing fee unless the court of appeals gives him permission to do so. Pursuant to Fed. R. App. P. 24, plaintiff has 30 days from the date of this order in which to ask the court of appeals to review this court's denial

2

of leave to proceed in forma pauperis on appeal. His motion must be accompanied by an affidavit as described in the first paragraph of Fed. R. App. P. 24(a) and a copy of this order. Plaintiff should be aware that if the court of appeals agrees with this court that the appeal is not taken in good faith, it will send him an order requiring him to pay all of the filing fee by a set deadline. If plaintiff fails to pay the fee within the deadline set, the court of appeals ordinarily will dismiss the appeal and order this court to arrange for collection of the fee from plaintiff's prison account.

### ORDER

IT IS ORDERED that petitioner's request for leave to proceed in forma pauperis on appeal is DENIED. I certify that petitioner's appeal is not taken in good faith. The clerk of court is directed to insure that petitioner's obligation to pay the $455 fee for filing his appeal is reflected in the court's financial record.

Entered this _6_ day of February, 2009.

BY THE COURT:

LYNN ADELMAN
District Judge

3

GERARD HARRIS # 268692

The other statements will be sent to
you very soon. By the business office of
Oak Hill Correctional Institution

Thank You
Gerald Harris

GERALD HARRIS #268692

This is the case that Back up my claim

Daniel v Paul, 395.u.s.298
395 u.s.298 *,89 S, Ct, 1697
23 L. Ed. 2d 318 "", 1969 u.s. Lexis 1438
Daniel Et AL v Paul
No 488
Supreme court of the United States,
395.u.s.298, 89 = Ct 1967, 23L Ed, 2d 318
1969 u.s. Lexis 1438
ACT of 1864 (ACT) 42 u.s.c.s § 2000A et seg
Section 201(b) civil Right Act of 1964
201(c) 11
201(b)(3) And 201(c)(3)
See. KATZENbACH v McClung, 379 u.s.294, 296-297
(1964). Gregory v. Meyer, 376 F.2d, 509, 511, N
(c.A. 8th Cir.1967). EVANS v LAUREl links, INC. 261
F. Supp. 474 (D.E.D. VA, 1966). United States v. FARLEY
,282 F.Supp. 948 (D.C. M.D. N.C 1968). United States
v. All STAR TRiANgle Bowl. INC 283. F.Supp.300
(D.S.C-1968). Miller v Amusement Enterprises
, INC. 394.F.2d, 372 (1968). Bell v. MARYlAND, 378
u.s.226, 242, Atlanta Motel v United States
,379 u.s.241, 279. et seg. United States v
Guest, 383.u.s.745, 761

Back ⟶